# EXHIBIT  1

# MORTGAGE MODIFICATION CONTRACT BREACHED BY SELENE DEFENDANTS



# DYKEMA

Dykema Gossett PLLC
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
WWW.DYKEMA.COM
Tel: (312) 876-1700
Fax: (312) 876-1155

**Jonathan S. Feld**
Direct Dial: (312) 627-5680
Direct Fax: (800) 951-0574

September 23, 2016

**Via Registered Mail & First Class Mail**

**Personal and Confidential**

Reg : Mortgage account no: 654727320

Based on your recent emails, we understand that you have requested to remove the escrow for taxes and insurance from your account, so you will only pay principal and interest to Ocwen. To accommodate your request, Ocwen has now taken steps to remove the escrow from your account. Please note that on August 8, 2016, Ocwen made a real estate tax payment on your behalf in the amount of $4,264.10. Your account was credited $63.02 for the penalty portion of that assessment. Because your account is no longer escrowed, you owe Ocwen $698.49 to reimburse it for the August 8, 2016 real estate tax payment. Further, you will be responsible for all future payments of taxes and insurance.

# EXHIBITS  2 & 3

# PLAINTIFFS PERFORMANCE OF THE MMC  (Ex.1) OF PRINCIPAL AND INTEREST PAYMENTS

## Mortgage Account Statement

| | |
|---|---|
| Statement Date | 11/16/16 |
| Account Number | 0654727320 |
| Payment Due Date | 12/01/16 |
| **Amount Due** | **$1,535.46** |

*If payment is received after 12/16/16, a $76.77 late fee will be charged.*

| | |
|---|---|
| Customer Care | 800-746-2936 |
| Insurance | 866-317-7661 |

| Account Information | | Explanation of Amount Due | |
|---|---|---|---|
| Principal Balance* | $209,291.90 | Principal | $641.61 |
| Escrow Balance | -$698.49 | Interest | $893.85 |
| Maturity Date | November 1, 2033 | **Total Regular Payment** | **$1,535.46** |
| Interest Rate | 5.12500% | **Total Amount Due** | **$1,535.46** |
| Prepayment Penalty | No | | |

\* This is the Principal Balance only, not the amount required to pay the loan in full.

### Activity Since Last Statement (09/13/16 to 10/14/16)

| Date Applied | Date Received | Description | Transaction Total | Principal | Interest | Escrow | Optional Products | Late Charges | Fees/ Other | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/23/16 | 08/11/16 | Payment | $1535.46 | $633.46 | $902.00 | | | | | |
| 09/23/16 | 09/12/16 | Payment | $1535.46 | $636.16 | $899.30 | | | | | |
| 10/13/16 | 10/13/16 | Payment | $1535.46 | $638.88 | $896.58 | | | | | |

Payments made per the  Mortgage Modification Agreement

### Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $1,908.50 | $5,653.07 |
| Interest | $2,697.88 | $8,166.07 |
| Escrow (Taxes & Insurance) | $.00 | $3,885.00 |
| Fees/Other Charges | $.00 | $.00 |
| Unapplied Funds** | $.00 | $.00 |
| Total | $4,606.38 | $17,704.14 |

### Special Notices

### Important News

Tax season is right around the corner. Please visit OCWEN's website at www.ocwencustomers.com to verify the social security number on file for your loan.

If you have any questions about your loan, please call 1-800-746-2936 and ask to set up an appointment with Daniel Robbins, your relationship manager, or schedule an appointment at www.ocwencustomers.com.



Ocwen Loan Servicing, LLC
West Palm Beach, FL 33416-4738

www.ocwencustomers.com

O C W E N

## Mortgage Account Statement

| | |
|---|---|
| Statement Date | 02/13/17 |
| Account Number | 0654727320 |
| Payment Due Date | 03/01/17 |
| **Amount Due** | **$4,871.43** |

If payment is received after 03/16/17, a $76.77 late fee will be charged.

| | |
|---|---|
| Customer Care | 800-746-2936 |
| Insurance | 866-317-7661 |

| Account Information | Explanation of Amount Due | |
|---|---|---|
| | Principal | $652.64 |
| | Interest | $882.82 |
| | Escrow | $1,111.99 |
| | Total Regular Payment | $2,647.45 |
| | Past Due Payment(s) Amount | $2,647.45 |
| | Unapplied Funds** | -$423.47 |
| | **Total Amount Due** | **$4,871.43** |

CRIMINAL EVIDENCE OF THEFT BY CONVERSION AND DIVERSION OF PRINCIPAL AND INTEREST PAYMENTS BY IPHH/OCWEN LLEGALLY CREATING AN ESCROW ACCOUNT IN VIOLATION OF ESCROW REMOVAL AGREEMENT , SEE EXHIBIT C PRECEEDING

This is the Principal Balance only, not the amount required to pay the loan in full.

### Activity Since Last Statement (01/17/17 to 02/13/17)

| Date Applied | Date Received | Description | Transaction Total | Principal | Interest | Escrow | Optional Products | Late Charges | Fees/ Other | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/10/17 | 02/10/17 | Payment | $1535.46 | $647.10 | $888.36 | $1111.99 | | | | -$1111.99 |

Payments made per the  Mortgage Modification Agreement

MATERIAL EVIDENCE OF THEFT BY CONVERSION AND DIVERSION OF MONTHLY PAYMENTS BY PHH MORTGAGE

| Past Payments Breakdown | | | Special Notices |
|---|---|---|---|
| | Paid Since Last Statement | Paid Year to Date | |
| Principal | $647.10 | $647.10 | |
| Interest | $888.36 | $888.36 | |
| Escrow (Taxes & Insurance) | $1,111.99 | $1,111.99 | |
| Fees/Other Charges | $.00 | $.00 | |
| Unapplied Funds** | $-1,111.99 | $423.47 | |
| Total | $1,535.46 | $3,070.92 | |

### Important News

**Unapplied Funds: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate unapplied funds account.  If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
Payments received are to be applied in accordance with the mortgage note. Payments will be first applied to bring the loan contractually current. Any additional funds received will be applied to outstanding fees and advances prior to being applied to principal.
If you have any questions about your loan, please call 1-800-746-2936 and ask to set up an appointment with Loan Tran, your relationship manager, or schedule an appointment at www.ocwencustomers.com.

# EXHIBIT  4

# STATEMENT PROVING BREACH OF MMC (EX.1) BY SELENE DEFENDANTS  AND ILLEGAL DIVERSION OF P & I



Ocwen Loan Servicing, LLC
West Palm Beach, FL 33416-4738

www.ocwencustomers.com

## Mortgage Account Statement

| | |
|---|---|
| Statement Date | 02/13/17 |
| Account Number | 0654727320 |
| Payment Due Date | 03/01/17 |
| **Amount Due** | **$4,871.43** |

*If payment is received after 03/16/17, a $76.77 late fee will be charged.*

| | |
|---|---|
| Customer Care | 800-746-2936 |
| Insurance | 866-317-7661 |

| Account Information | Explanation of Amount Due | |
|---|---|---|
| | Principal | $652.64 |
| | Interest | $882.82 |
| | Escrow | $1,111.99 |
| | Total Regular Payment | $2,647.45 |
| | Past Due Payment(s) Amount | $2,647.45 |
| | Unapplied Funds** | -$423.47 |
| | **Total Amount Due** | **$4,871.43** |

**CRIMINAL EVIDENCE OF THEFT BY CONVERSION AND DIVERSION OF PRINCIPAL AND INTEREST PAYMENTS BY IPHH/OCWEN LLEGALLY CREATING AN ESCROW ACCOUNT IN VIOLATION OF ESCROW REMOVAL AGREEMENT , SEE EXHIBIT C PRECEEDING**

This is the Principal Balance only, not the amount required to pay the loan in full.

### Activity Since Last Statement (01/17/17 to 02/13/17)

| Date Applied | Date Received | Description | Transaction Total | Principal | Interest | Escrow | Optional Products | Late Charges | Fees/ Other | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/10/17 | 02/10/17 | Payment | $1535.46 | $647.10 | $888.36 | $1111.99 | | | | -$1111.99 |

**Payments made per the Mortgage Modification Agreement**

**MATERIAL EVIDENCE OF THEFT BY CONVERSION AND DIVERSION OF MONTHLY PAYMENTS BY PHH MORTGAGE**

### Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $647.10 | $647.10 |
| Interest | $888.36 | $888.36 |
| Escrow (Taxes & Insurance) | $1,111.99 | $1,111.99 |
| Fees/Other Charges | $.00 | $.00 |
| Unapplied Funds** | $-1,111.99 | $423.47 |
| Total | $1,535.46 | $3,070.92 |

### Special Notices

### Important News

**Unapplied Funds:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate unapplied funds account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.
Payments received are to be applied in accordance with the mortgage note. Payments will be first applied to bring the loan contractually current. Any additional funds received will be applied to outstanding fees and advances prior to being applied to principal.
If you have any questions about your loan, please call 1-800-746-2936 and ask to set up an appointment with Loan Tran, your relationship manager, or schedule an appointment at www.ocwencustomers.com.

# EXHIBIT  5

**SETTLEMENT AGREEMENT  ON BEHALF OF 50 STATE ATTORNEY GENERALS WHICH IS BREACHED BY SELENE DEFENDANTS, TRIGGERING AN INDEPENDENT SECOND FEDERAL LAW SUIT BY FLORIDA ATTORNEY GENERAL PAM BONDI\* (GR.Ex. X)**

**\*Pam Bondi is now poised  to become United States Attorney General**

## MADIGAN: $2.1 BILLION SETTLEMENT WITH SIXTH MORTGAGE SERVICER OVER FORECLOSURE ABUSES

### *Ocwen Financial Must Provide Principal Reductions, Cash Payments to Borrowers & Ensure Fundamental Reforms*

**Chicago** — Attorney General Lisa Madigan today joined with 49 attorneys general and the federal Consumer Financial Protection Bureau (CFPB) to announce a $2.1 billion settlement with Ocwen Financial Corporation to address allegations of "robo-signing" of foreclosure documents and other fraudulent practices while servicing loans of struggling homeowners.

The settlement addresses mortgage servicing misconduct by Atlanta-based Ocwen and two companies it acquired – Homeward Residential Inc. and Litton Home Servicing LP. Ocwen specializes in servicing high-risk mortgage loans. According to a complaint filed in the U.S. District Court for the District of Columbia, the misconduct resulted in premature and unauthorized foreclosures, violations of homeowners' rights and protections and the use of false and deceptive documents and affidavits.

"Today's settlement is part of my ongoing work to hold banks and servicers accountable for fraudulent conduct that affected many Illinois homeowners struggling to save their homes," Madigan said. "Similar to the national mortgage settlement, this settlement will provide loan refinancing and direct payments to harmed borrowers."

Under the agreement, Ocwen must provide $2 billion in first-lien principal reduction loan modifications and $125 million for cash payments to borrowers on more than 183,000 foreclosed loans. In Illinois, Ocwen will provide troubled borrowers with more than $91 million in first lien principal reductions and more than 7,900 borrowers will be eligible for a direct cash payment.

The Ocwen settlement does not grant immunity from criminal offenses and would not affect criminal prosecutions. The agreement does not prevent homeowners or investors from pursuing individual, institutional or class action civil cases. The agreement also preserves the authority of state attorneys general and federal agencies to investigate and pursue other aspects of the mortgage crisis, including securities cases.

Ocwen Financial will contact affected borrowers directly. Borrowers can also contact Ocwen directly at 1 (800) 337-6695 to obtain more information or contact Madigan's Homeowner's Helpline, 1 (866) 544-7151 or visit her website.

The monitor of the national mortgage settlement, Joseph A. Smith, Jr., will also oversee Ocwen's settlement implementation and compliance.

# GROUP EXHIBIT X

**"RAP SHEET" OF WHITE COLLAR CRIMINALS-**

**SELENE DEFENDANTS-**

**LAW SUITS BY STATE ATTORNEY GENERALS,**

**REGULATORY AGENCIES AND COMMISSIONS**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

OFFICE OF THE ATTORNEY GENERAL,
THE STATE OF FLORIDA,
Department of Legal Affairs,

and

OFFICE OF FINANCIAL REGULATION,
THE STATE OF FLORIDA,
Division of Consumer Finance,

       Plaintiffs,

       v.                              CASE No. _____

OCWEN FINANCIAL CORPORATION,
a Florida corporation, OCWEN MORTGAGE
SERVICING, INC., a U.S. Virgin Islands
corporation, and OCWEN LOAN
SERVICING, LLC, a Delaware limited
liability company,

       Defendants.
_____/

## **COMPLAINT**

Plaintiffs, the Office of the Attorney General, State of Florida, Department of Legal Affairs (the "Florida Attorney General"), and the Office of Financial Regulation, State of Florida, Division of Consumer Finance (the "Florida Office of Financial Regulation") (collectively, the "Plaintiffs"), by and through their undersigned attorneys, sue defendants, Ocwen Financial Corporation, a Florida corporation ("Ocwen Financial"), Ocwen Mortgage Servicing, Inc., a U.S. Virgin Islands corporation ("Ocwen Mortgage Servicing"), and Ocwen Loan Servicing, LLC, a Delaware limited liability company ("Ocwen Loan Servicing") (Ocwen Financial, Ocwen Mortgage Servicing, and Ocwen Loan Servicing are collectively referred to herein as the "Ocwen Defendants" or "Ocwen"), and respectfully allege as follows:

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

Case No. 9:17-CV-80495

CONSUMER FINANCIAL PROTECTION BUREAU,
     Plaintiff,

vs.

OCWEN FINANCIAL CORPORATION,
     a Florida corporation,

OCWEN MORTGAGE SERVICING, INC.,
     a U. S. Virgin Islands corporation, and

OCWEN LOAN SERVICING, LLC,
     a Delaware limited liability company,

     Defendants.

_____

## COMPLAINT

1.     The Consumer Financial Protection Bureau ("Bureau") brings this action against Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing, LLC (collectively "Ocwen" or "Defendants") under Sections 1054 and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5564 and 5565. Ocwen is one of the largest mortgage servicers in the United States. The Company specializes in servicing the loans of distressed borrowers. It committed numerous violations of Federal consumer financial laws that have harmed borrowers. Among other things, Ocwen has improperly calculated loan balances, misapplied borrower payments, failed to correctly process escrow and insurance payments, and failed to properly investigate and make corrections in response to consumer complaints. Ocwen has

# STATE OF ILLINOIS

# DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION

# DIVISION OF BANKING

IN THE MATTER OF:                                             )
                                                             )        No. 2017-MBR-CD-01
**OCWEN LOAN SERVICING, LLC**                                )
NMLS No. 1852                                                )
Illinois Residential Mortgage License No. MB.6759457         )
1661 Worthington Road, Suite 100                             )
West Palm Beach, FL 33409                                    )
                                                             )
**HOMEWARD RESIDENTIAL, INC.**                               )
NMLS No. 3984                                                )
Illinois Residential Mortgage License No. MB.6760570         )
16675 Addison Road                                           )
Addison, TX 75001                                            )
                                                             )
**LIBERTY HOME EQUITY SOLUTIONS, INC.**                      )
NMLS No. 3313                                                )
Illinois Residential Mortgage License No. MB.6760159         )
10951 White Rock Road, Suite 200                             )
Rancho Cordova, CA 95670                                     )

## ORDER TO CEASE AND DESIST AND PLACING LICENSES ON PROBATION

The DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Division of Banking ("Department"), having reviewed the circumstances and activities of Ocwen Loan Servicing, LLC ("OLS"), Homeward Residential, Inc. ("Homeward Residential"), and Liberty Home Equity Solutions, Inc. ("LHES") and found violations of the Residential Mortgage License Act of 1987 ("Act") [205 ILCS 635], and the rules promulgated under the Act ("Rules") [38 Ill. Adm. Code 1050], hereby issues this ORDER TO CEASE AND DESIST AND PLACING LICENSES ON PROBATION, and states:

## STATUTORY PROVISIONS

1. Section 4-1 (h-1) of the Act provides that the Department, as part of its Supervision of licensees, may issue orders against any person if the Department has reasonable cause to believe that an unsafe, unsound, or unlawful practice has occurred, is occurring, or is about to occur, if any person has violated, is violating, or is about to violate any law, rule, or written agreement with the Department, or for the purposes of administering the provisions of this Act and any rule adopted in accordance with this Act.

2. Section 4-5 of the Act in subsection (h)(3) provides that the Department may enter an order placing a licensee on probation for a period of time subject to all reasonable conditions as the Department may specify. The Department may enter said order upon finding the licensee in violation of the grounds set forth in subsection (i). The grounds in subsection (i) include items (11) failure to comply with any order of the Department or rule made or issued under the provisions of this Act and (17) failure to comply with or violation of any provision of this Act.

3. Section 1050.870 of the Rules provides, in part, that the servicing procedures of a licensee shall comply with applicable federal and State statutes and regulations.

## PARTIES AND JURISDICTION

4. Ocwen Financial Corporation ("OFC") is a Florida corporation with headquarters in West Palm Beach Florida. Ocwen Mortgage Servicing, Inc. ("OMS") is a U.S. Virgin Islands corporation with headquarters in St. Croix, U.S. Virgin Islands and an assigned NMLS identifier number of 1089752. OLS is a Delaware limited liability company with headquarters located in West Palm Beach, Florida and an assigned NMLS identifier number of 1852. Homeward Residential is a corporation with headquarters located in Addison, Texas and an assigned NMLS identifier number of 3984. LHES is a corporation with headquarters located in Rancho Cordova, California and an assigned NMLS identifier number of 3313.

5. OLS at all relevant times herein was a wholly-owned subsidiary of OMS, which was a wholly-owned subsidiary of OFC. OLS, OMS, and OFC are collectively referred to hereinafter for purposes of Multi-State Examination and Consumer Financial Protection Bureau ("CFPB") findings as "Ocwen." OFC further has ownership of subsidiaries LHES and Homeward Residential Holdings, Inc., the parent company of Homeward Residential. The Department is adding Homeward Residential and LHES to this Order, although not part of the Ocwen Multi-State Examination, so that financial and loan activities that are the subject to this Order are not transferred to or conducted by any Ocwen subsidiary holding an Illinois Residential Mortgage License.

6. The Department has jurisdiction over the licensing and regulation of persons and entities engaged in the business of residential mortgage loan servicing, purchasing, and originating in Illinois pursuant to the Act and Rules. The Department has issued Illinois Residential Mortgage Licenses to OLS, Homeward Residential, and LBES authorizing each entity to conduct their activities noticed to the Department of servicing, purchasing, and originating of residential mortgage loans subject to the Act and Rules. The Illinois Residential Mortgage Licenses held by each entity are as follows: OLS holds Illinois Residential Mortgage License No. MB.6759457, Homeward Residential holds Illinois Residential Mortgage License No. MB.6760570, and LHES holds Illinois Residential Mortgage License No. MB.6760159.

7. The Multi-State Mortgage Committee ("MMC") is a committee of state mortgage regulators who have agreed to address their enforcement concerns with Ocwen in a collective and coordinated manner. On February 28, 2015, the states of Florida, Maryland, Massachusetts, Mississippi, Montana, and Washington (collectively, the "Examining States") conducted a Multi-State Examination of Ocwen in order to determine Ocwen's compliance with applicable federal and state laws and regulations, financial condition, and control and supervision of the licensed mortgage servicing operations. The Multi-State Examination of Ocwen covered the period of January 1, 2013 to February 28, 2015.

8. Pursuant to Sections 4-1 and 4-2 of the Act, the Department is authorized to inspect the books, accounts, papers, records, and files of residential mortgage licensees transacting business in Illinois to determine compliance with the provisions of the Act and Rules, and with any law, rule, or regulation applicable to the conduct of the licensed business. Pursuant to Section 4-7 of the Act, the Department is authorized to accept and rely upon examination reports made by other government officials, within or without the State of Illinois.

## FINDINGS OF FACT

9. During the examination, the Examining States identified violations by Ocwen of state and federal laws and regulations, including, but not limited to consumer (borrower) escrow accounts, lender placed insurance, loan transfers and boarding, and default servicing. A number of the violations were connected to Ocwen's nationwide system of record REALServicing and deficiencies within that system.

10. The MMC examination found that Ocwen has been unable to accurately manage many of the consumer escrow accounts in its portfolio. Consumer escrow accounts are accounts that contain consumer funds held for payment of taxes and insurance. The MMC examination further found that Ocwen failed to make timely disbursements to pay for taxes and insurance from escrow accounts on numerous loans. The MMC examination also found that Ocwen routinely sent consumers inaccurate, confusing and/or misleading escrow statements.

11. Based on the findings of the examination and subsequent communications with OFC, the state regulators and Ocwen entered into a Memorandum of Understanding ("MOU") on December 7, 2016.

12. The MOU required Ocwen to retain an independent auditing firm to perform a comprehensive audit reconciliation of all consumer escrow accounts, with a report to be furnished by the Auditor to Ocwen and the MMC within five business days thereafter. The audit plan was to be submitted to, and approved by, the MMC no later than January 13, 2017.

13. Ocwen's response to the state regulators on January 13, 2017, was that the reconciliation of escrow accounts, which is paramount in ensuring the appropriate management of

consumer funds, would cost $1.5 billion and well beyond Ocwen's financial capacity. Ocwen has suggested instead a sample of 457 escrow accounts be reconciled out of 2.5 million active first lien escrow accounts that Ocwen has serviced since January 2013. This proposal would leave a vast number of consumers with unreconciled escrow accounts.

14. The MOU required Ocwen to provide, among other things, a viable going forward business plan that encompassed an analysis of its financial condition going forward. The purpose of the plan was to analyze Ocwen's future financial condition incorporating and encompassing all known or reasonably certain liabilities.

15. Ocwen's going forward plan submitted in response to the MOU did not provide a complete assessment of its financial condition because it excluded significant liabilities. If the going forward plan accurately accounted for known or anticipated regulatory penalties and other operational costs, including, but not limited to, the expenses of moving to a new servicing platform and complete reconciliation of consumer escrow accounts with restitution to impacted borrowers, it would indicate the company would not continue as a going concern.

16. During the course of the MMC process and as of the end of the calendar year 2016 fourth quarter, the Department was provided updated information that Ocwen was servicing 56,512 Illinois residential mortgage loans with an unpaid principal balance of $7,360,938,328.

17. The Department, and other state regulators, became apprised of CFPB findings from an investigation of Ocwen's loan servicing practices. The CFPB found that Ocwen has engaged in numerous violations of federal laws and regulations, including, among others, the Real Estate Settlement Procedures Act and regulations promulgated thereunder as Regulation X, and the Truth in Lending Act and regulations promulgated thereunder as Regulation Z and causing and continuing to cause substantial consumer harm.

18. The CFPB findings include, among other things, that Ocwen has illegally foreclosed on borrowers; improperly calculated loan balances; misapplied borrower payments; failed to correctly process escrow and insurance payments; failed to check the accuracy of account information for loans for which it acquired servicing rights from other servicers; and sold servicing rights to new servicers without fully disclosing or correcting errors in borrowers' loan files.

19. While Ocwen is currently facing numerous substantiated complaints filed by consumers nationwide, the Department is in receipt of complaints filed by Illinois consumers against Ocwen encompassing the aforementioned practices identified by the MMC and CFPB. Many of the Illinois complaints have a connecting theme tied to errors in Ocwen's servicing records. The Illinois consumers' complaints include, among other things, that Ocwen's servicing records contain incorrect information and payment discrepancies, updates of loan modifications and other changes are delayed or lost in the system, property hazard insurance has been late paid or wrongly cancelled, property taxes have

been paid for the wrong tax parcels, transfer of servicing and notices wrongly sent to consumers such as for transfer of servicing and flood insurance, and consumer debts wrongly reported to the credit reporting bureaus.

## CONCLUSIONS OF LAW

20. Based upon the aforementioned information and findings from multiple state and federal agencies and the systematic impact on residential mortgage loans serviced by Ocwen throughout the U.S., including Illinois, the Department has reasonable cause to believe that:

a. OLS has engaged in, is engaging in, or is about to engage in an unsafe, unsound, or unlawful practice in violation of Section 4-1(h-1) of the Act and has engaged in servicing procedures not in compliance with applicable federal and State statutes and regulations in violation of Section 1050.870 of the Rules. OLS is in further violation of Section 4-5(i) (11) and (17) of the Act.

b. Homeward Residential and LHES have engaged in, are engaging in, or are about to engage in an unsafe, unsound, or unlawful practice in violation of Section 4-1(h-1) of the Act. Homeward Residential and LHES are in further violation of Section 4-5(i) (17) of the Act.

c. The public interest will be irreparably harmed by delay in issuing a cease and desist order to OLS, Homeward Residential, and LHES.

## NOW IT IS HEREBY ORDERED THAT,

I. OLS, Homeward Residential, and LHES shall immediately cease acquiring new mortgage servicing rights, and acquiring or originating new residential mortgage loans until they can demonstrate to the Department's satisfaction pursuant to the Act and Rules that:

a. OLS, Homeward Residential, and LHES are a going concern by providing a financial analysis that encompasses OLS, Homeward Residential, LHES, OFC, and OMS as to all of the liabilities currently maintained and for which they have knowledge they will incur in the course of their business;

b. provide the state regulators with a full and complete reconciliation of their escrow accounts showing that consumer funds are appropriately collected, properly calculated, and disbursed accurately and timely; and

Page - 6 of 6 - In the Matter of Ocwen

II. The Department places the Illinois Residential Mortgage Licenses of OLS, Homeward Residential, and LHES on Probation pursuant to Section 4-5(h)(3) of the Act until such time they are in compliance with this Order.  During the period of Probation, OLS, Homeward Residential, and LHES shall submit to the Department reports on a monthly basis on financial condition and reconciliation of escrow accounts.

ORDERED THIS _____ DAY OF _____, 2017

ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION
BRIAN A. SCHNEIDER, SECRETARY

DIVISION OF BANKING


_____
KERRI A. DOLL, DIRECTOR



**You are hereby notified that this Order is an administrative decision.  Pursuant to 205 ILCS 635/4-12 and 38 Ill. Adm. Code, 1050.1510 *et seq.* any party may file a request for a hearing on an administrative decision.  The request for a hearing and $500 hearing fee by certified check or money order shall be filed with the Department at 320 West Washington Street, 5th Floor, Springfield, IL 62786 within 10 days after the receipt of an administrative decision.    The request for hearing must include an explicit admission, denial, or appropriate response to each allegation or issue contained in the administrative decision pursuant to 38 Ill. Adm. Code 1050.1570.  A hearing shall be held on the administrative decision, by the Department of Financial and Professional Regulation, Division of Banking.  Absent a request for a hearing, this Order shall constitute a final administrative Order subject to the Administrative Review Law [735 ILCS 5/3-101 *et seq.*].**

33 states go after Ocwen/PHH Mortgage over servicing fees - HousingWire

https://upsolve.org/learn/ocwen-lawsuit/

A coalition of 33 state attorneys general filed a motion against **PHH Mortgage** and its predecessor **Ocwen Loan Servicing** for allegedly charging unlawful servicing fees to nearly 1 million borrowers.

The attorneys general, co-led by New York's Letitia James and Minnesota's Keith Ellison, are opposing a proposed class action settlement that would permit PHH to profit from mortgage payment processing fees made by phone or online and would allow PHH to increase the fees for the remaining life of the loan.

The motion states the proposed settlement was carried out too quickly, under the pandemic's extenuating circumstances and estimates PHH charged the 1 million homeowners somewhere between $7.50 to $17.50 in each monthly statement. If allowed, PHH could raise this fee to $19.50 per month.

In a Friday brief, the coalition alleged the charges by PHH are "illegal" and "improper" because the authorization of these fees cannot be found in the mortgage contracts. With that scrutiny, PHH would be violating the Fair Debt Collection Practices Act (FDCPA) were the **CFPB** to conclude that PHH is essentially a "debt collector."

"PHH's sole purpose is to collect and process homeowners' payments, which it already makes millions of dollars from each year. In the 21st century, when most Americans pay their bills online or by phone, to charge fees on top of what they are already being paid is not only unethical, but unlawful," James said in a statement.

Both Ocwen and PHH have come under legal fire in recent years, after a 2017 cease-and-desist order prohibited the acquisition of new mortgage servicing rights and the origination of mortgage loans by

subsidiary **Ocwen Loan Servicing** until the company was "able to prove it can appropriately manage its consumer mortgage escrow accounts."

Then, the CFPB announced that it was suing Ocwen for "failing borrowers at every stage of the mortgage servicing process."

Ocwen then spent the next several months settling lawsuits with the 31 states that took action against it. The cumulation of legal action from the states and the CFPB nearly put Ocwen out of business.

These one-time payment methods are optional and, prior to making a payment, PHH discloses to the borrower the fee amount as well as other payment methods available that do not require a fee or require a lesser fee. We believe that the proposed settlement, which is substantially similar to a prior class action settlement approved by a federal court less than two years ago, resolves the disputed legal claims and is in the best interests of the borrower class," the spokesperson said.

## [PHH Mortgage Class Action Lawsuit - Pacific Laws](#)

https://pacificlaws.com/phh-mortgage-class-action-lawsuit

Oct 20, 2021 · A **Phh Mortgage** Class Action **Lawsuit** is similar to any other case filed in the court. The difference between the **mortgage** class action **lawsuit** and any other case is that the class action **lawsuit** is taken up by an individual rather than by a company or organization. You must provide details in your complaint about the mispayment of your **mortgage.**

**EXPLORE FURTHER**

| | |
|---|---|
| **PHH Mortgage Corp. Agrees to Settle** Pay-to-Pay Class Action fo… | topclassactions.com |
| Mortgage Holder Settles Lawsuit With PHH Mortgage Corp After … | topclassactions.com |
| PHH Mortgage to Pay $45M **In Mortgage Servicing Fraud Lawsuit** | lawyersandsettlements.com |
| OCWEN Slammed With $2 Billion Settlement - Law Office of D.L. … | dianedrain.com |
| **Glen Messina** - President, Chie.. - Ocwen Financial \| ZoomInfo.com | zoominfo.com |

# $45M Settlement to Benefit PHH Mortgage Borrowers

FOLLOW ARTICLE
100

By Paul Tassin
January 5, 2018

PHH Mortgage Corp. has agreed to pay $45 million to resolve claims that it improperly serviced thousands of single-family residential mortgages.

The PHH Mortgage lawsuit was brought by the attorneys general of 49 states and the District of Columbia over allegations that the New Jersey-based mortgage servicer violated the federal Consumer Financial Protection Act and the consumer protection laws of several states.

Among other allegations, the plaintiffs claim that from 2009 through 2012, PHH Mortgage failed to correctly apply borrowers' payments, charged unauthorized fees, made improper threats of foreclosure, and conveyed mixed messages to borrowers engaged in loss mitigation.

The states further allege PHH Mortgage failed to maintain proper records, failed to properly oversee third-party vendors, and mishandled the preparation, execution and notarization of official documents.

The complaint says PHH Mortgage's alleged misconduct resulted in "premature and unauthorized foreclosures, violation of homeowners' rights and protections, and the use of false and deceptive affidavits and other documents."

Under terms of the settlement, PHH will pay a total amount in excess of $45 million. Of that amount, about $31.5 million will be transferred to a settlement administrator to be distributed among qualifying mortgage debtors who were affected by the mortgage servicing practices at issue.

The rest of the fund will cover the plaintiff states' attorney fees and costs related to the investigation and litigation, plus an administrative penalty.

According to the consent judgment, payments to qualifying mortgage borrowers will be distributed by a settlement administrator in a manner similar to the way class action settlements are distributed. Claimants will need to file a claim with the settlement administrator to receive payment.

Qualifying borrowers will include those whose homes were sold or taken in foreclosure from Jan. 1, 2009 through Dec. 31, 2012 and whose mortgages were serviced at the time by PHH Mortgage. Other criteria for payment may be established later by an executive committee comprised of government signatories to the settlement.

Settlement benefits will also be available for a few hundred borrowers in New Hampshire, the one U.S. state that was not a plaintiff. That state's banking commissioner contributed to a review of PHH Mortgage's servicing practices, according to Law360.

PHH has also agreed to be bound to new mortgage servicing standards that require the company to amend its internal practices. Among the new requirements are compliance testing, internal audits, root cause analyses and corrective action when problems are found, and reports to the executive committee.

The new servicing standards are effective immediately and remain in effect for three years.

PHH Mortgage notes that the settlement does not require the company to admit to any wrongdoing or violations of applicable law.

Top Class Actions will post updates to this class action settlement as they become available. For the latest updates, keep checking **TopClassActions.com** or **sign up for our free newsletter**. You can also receive notifications when this article is updated by using your **free Top Class Actions account** and clicking the "Follow Article" button at the top of the post.
The **PHH Mortgage Corp. Unlawful Mortgage Servicing Practices Lawsuit** is *State of Alabama, et al. v. PHH Mortgage Corp.*, Case No. 1:18-cv-00009, in the U.S. District Court for the District of Columbia.

(Photo Credit: fizkes/Shutterstock)

A mortgage holder with a defaulted home loan has settled a potential class action lawsuit with PHH Mortgage Corp. after he alleged that the company inflated property inspection fees.

Kirk Culver sued the company in 2020 and said in a proposed class action lawsuit that PHH improperly charged him markups on its costs for third-party property inspections for defaulted loans, **Law360 reports**.

According to the claim, PHH contracted with a third-party vendor that used a computerized system to generated property inspections every 20 to 30 days, and with each inspection, PHH added between $15 to $19.50 to Culver's mortgage.

However, the actual cost of the inspections were "much less than what was charged to plaintiff," the class action lawsuit said.

Although Culver sought to represent other mortgage borrowers who had allegedly been through the same thing, his counsel told Law360 that after discovery they found "that the claims were not ripe for class certification."

"We, therefore, turned our attention to resolving our individual client's claim and damages, and we are very pleased that we were able to do so," Zachary Ludens of Zebersky Payne Shaw Lewenz LLP said.

Ludens said that deal spelt the end of the Class claims in terms of Culver being the Class Representative.

In June, PHH tried to get the case tossed out, but U.S. District Judge Paul G. Byron ruled in Culver's favor and allowed his claims of breach of contract and violations to the Fair Debt Collection Practices Act, as well as allegations of violations of the Florida Consumer Collection Practices Act, Law360 reports.

PHH said in its motion for dismissal that it did not qualify as a debt collector and shouldn't be subjected to the laws Culver was suing under. However, Judge Byron cited PHH's statements that include an amount due, a $72.22 late fee that "may be charged," and a clear statement saying that the letter is from a "debt collector attempting to collect a debt," as evidence it does act as a debt collector.

"If the instant communication — which includes clear language identifying defendant as a debt collector attempting to collect a debt, a potential late fee of $72.22 and a total amount due — does not qualify as a debt collection communication, it is difficult to comprehend what would."

Last September, **PHH reached a $12.6 million class action settlement** with homeowners who alleged that the company's practice of charging what it referred to as "processing fees" when customers made their home loan payments online or over the telephone — fees ranging from $17.50 to $7.50 — violated the Federal Fair Debt Collection Practices Act and were in breach of their mortgage contracts.

*Have you ever taken out a loan with PHH? Tell us about your experience in the comments section!*

Culver is represented by Jordan A. Shaw and Zachary D. Ludens of Zebersky Payne Shaw Lewenz LLP, J. Matthew Stephens of Methvin Terrell Yancey Stephens & Miller PC and Darren R. Newhart of Newhart Legal PA.

PHH is represented by Dale A. Evans Jr. of Locke Lord LLP.

The **PHH Inspection Fee Class Action Lawsuit** is *Culver v. PHH Mortgage Corp.,* Case No. 6:20-cv-02292, in the U.S. District Court for the Middle District of Florida.

# 74 Million Dollar settlement agreement –

# United Sates v. PHH  Mortgage in a  Fraud, False claims and *qui tam*  action  against PHH

*United States ex rel. Mary Bozzelli v. PHH Mortgage Corporation and PHH Corporation (E.D.N.Y.),  13-cv-3084*

# EXHIBIT  A

## FELONY VANDALISM BY FELONS

## SELENE DEFENDANTS



